IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DALVIN WORTHINGTON,              )
                                 )
        Plaintiff,               )
                                 )
v.                               )        CIVIL CASE NO. 2:21-cv-220-ECM
                                 )                    [WO]
TROY UNIVERSITY,                 )
                                 )
        Defendant.               )

## MEMORANDUM OPINION and ORDER

## I.  INTRODUCTION

Plaintiff Dalvin Worthington ("Plaintiff" or "Worthington"), who is an African-American male, brings this action against his former employer, Troy University ("Defendant" or "Troy").  The Plaintiff brings claims of race discrimination, gender discrimination, and retaliation, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); and race discrimination, disparate treatment, and retaliation in violation of 42 U.S.C. § 1981 pursuant to 42 U.S.C. § 1983.  His claims arise out of his termination due to the Defendant's eliminating his position and the Defendant's subsequent failure to select him for a newly created position.

Now pending before the Court are the Defendant's motion for summary judgment (doc. 30) and the Defendant's motion to strike (doc. 35).  The motions are ripe for review.  Upon consideration of the briefs, evidence, and applicable law, and for the reasons that

follow, the Defendant's motion for summary judgment is due to be granted and the Defendant's motion to strike is due to be denied as moot.

## II.  JURISDICTION

The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 and the jurisdictional grant found in 42 U.S.C. § 2000e-5(f)(3).  Personal jurisdiction and venue are uncontested.

## III.  LEGAL STANDARD

"Summary judgment is proper if the evidence shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018) (quoting FED. R. CIV. P. 56(a)).  "[A] court generally must 'view all evidence and make all reasonable inferences in favor of the party opposing summary judgment.'" *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1252 (11th Cir. 2016) (citation omitted).  However, "conclusory allegations without specific supporting facts have no probative value." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924–25 (11th Cir. 2018) (citation omitted).  If the record, taken as a whole, "could not lead a rational trier of fact to find for the non-moving party," then there is no genuine dispute as to any material fact. *Hornsby-Culpepper*, 906 F.3d at 1311 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of demonstrating that there is no genuine dispute as to any material fact, and the movant must identify the portions of the record which

support this proposition. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986));
FED. R. CIV. P. 56(c).   The movant may carry this burden "by demonstrating that the
nonmoving party has failed to present sufficient evidence to support an essential element
of the case." *Hornsby-Culpepper*, 906 F.3d at 1311.   The burden then shifts to the non-
moving party "to establish, by going beyond the pleadings, that a genuine issue of material
fact exists." *Id.* at 1311–12.   The non-moving party "must do more than simply show that
there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*,
475 U.S. at 586.   Non-movants must support their assertions "that a fact cannot be or is
genuinely disputed" by "citing to particular parts of materials in the record, including
depositions, documents, electronically stored information, affidavits or declarations,
stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing
that the materials cited do not establish the absence or presence of a genuine dispute, or
that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV.
P. 56(c)(1)(A) & (B).

In determining whether a genuine issue for trial exists, the court must view all the
evidence in the light most favorable to the non-movant. *Fla. Int'l Univ. Bd. of Trs.*, 830
F.3d at 1252.   Likewise, the reviewing court must draw all justifiable inferences from the
evidence in the non-moving party's favor. *Id.*   However, "mere conclusions and
unsupported factual allegations are legally insufficient to defeat a summary judgment
motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam).

## IV. FACTS

The facts, stated in the light most favorable to the non-movant, are as follows:

On April 1, 2016, Worthington began his employment with Troy as the Operations Manager at Troy's Rosa Parks Museum (the "Museum") in Montgomery, Alabama. He served in this role until his employment with Troy ended on August 1, 2019. At all relevant times, Dr. Felicia Bell ("Bell"), the Museum's Director, was Worthington's manager. Worthington's job duties included assisting the Director in training Museum staff, students, and volunteers; assisting with all aspects of retail operations; ordering all supplies; managing purchase orders and invoices; organizing the budget in collaboration with the Director; "managing complex calendars and coordinating logistics of large group tours and daily staff schedules"; coordinating logistics for conferences, meetings, and other Museum events; monitoring the working order of the Museum and making "requests for physical and technological improvements"; "ensuring appropriate coordination, tracking and follow-up at all levels including the Director"; and "working closely with other administration offices at Troy University to provide information and documentation as required." (Doc. 31-4 at 4). Worthington also performed the job duties of his female co-workers, Donna Beisel ("Beisel") and Madeline Burkhardt ("Burkhardt"). Worthington, Beisel, and Burkhardt all earned approximately the same wages working for Troy. Beisel and Burkhardt were involved with education programs at the Museum.

According to Worthington, Bell "routinely made discriminatory comments regarding men." (Doc. 33-2 at 1, para. 6). Additionally, he witnessed Bell "exclusively

hiring openly gay males or females, including Kory Ward, Ryan Ardnt, Emma Roberts, Tia Wheeler, Rhonda Toney, and Barbara Ware." (*Id.* at 1, para. 7).

On May 28, 2019, Bell issued a memorandum stating that the Operations Manager position would be eliminated effective August 1, 2019, "[a]s a result of right-sizing to effectively serve visitors to the Rosa Parks Museum." (Doc. 31-2 at 2).   Bell's memorandum further stated that the Operations Manager's responsibilities were "too similar to the Director's responsibilities," that the Operations Manager position "does not effectively serve the needs of the Museum," and that "[t]he overwhelming need of the Museum is front-of-house support . . . and administrative support . . . , not management-level operations." (*Id.*).   At this time, Worthington earned $14.80 per hour as Operations Manager.   A portion of the wages from the eliminated Operations Manager position were to be used towards the wages of a newly created Museum Guide/Office Assistant Position, which would be $10.00 per hour, full-time.   The remaining savings were to be absorbed into Troy's budget.   Worthington received notice of his termination in June or July 2019. Prior to Worthington's termination, Burkhardt received a raise.

The Museum Guide/Office Assistant position had different minimum qualifications than the Operations Manager position.   For example, the Operations Manager position required a bachelor's degree, whereas the Museum Guide/Office Assistant position required only a high school diploma.   And as described above, the hourly wage for the Museum Guide/Office Assistant position was $10.00 per hour, compared to the $14.80 hourly wage for the Operations Manager position.   The Museum Guide/Office Assistant's

job duties include conducting Museum tours; interacting with visitors; and administrative support such as making purchase orders, maintaining records of invoices and other expenses, ordering merchandise and supplies, generating the staff work schedule, and submitting requests for IT and facilities services. (Doc. 31-3 at 6).

Troy selected Tia Wheeler ("Wheeler"), who is female, to fill the Museum Guide/Office Assistant position.  Worthington was aware of the position, but there is no evidence that he applied for it.  Beisel told Worthington that two more qualified males applied for the position but that Troy selected Wheeler over the two males.

After his employment with Troy ended, Worthington filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC").  On February 6, 2020, Troy submitted a Position Statement to the EEOC, stating that "Mr. Worthington's position was eliminated because the Rosa Parks Museum could no longer financially support the position." (Doc. 33-1).

Worthington filed his Complaint in the United States District Court for the Northern District of Alabama on November 11, 2020, asserting four claims against Troy: (1) "race and or gender-based disparate treatment" in violation of Title VII, (doc. 1 at 5); (2) "race and or gender-based disparate treatment" in violation of Title VII under a "mixed motive" theory, (*id.* at 7); (3) retaliation in violation of Title VII; and (4) race-based discrimination, disparate treatment, and retaliation in violation of § 1981.  On February 15, 2021, Troy filed a motion to transfer venue to the Middle District of Alabama, and on March 15, 2021, the case was transferred to this Court.

# V. DISCUSSION

Absent direct evidence of race discrimination or retaliation, a plaintiff may demonstrate circumstantial evidence of disparate treatment through the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981). Because Worthington has not offered any direct evidence of discrimination or retaliation, the Court addresses his claims under the *McDonnell Douglas* framework applicable to circumstantial evidence of discrimination. *See Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010). Under this framework, an employee creates a presumption of unlawful discrimination by first establishing a prima facie case of discrimination. *See Lewis v. City of Union City*, 918 F.3d 1213, 1220–21 (11th Cir. 2019) (en banc) ("*Lewis I*"). The burden then shifts to the employer "to articulate a legitimate, nondiscriminatory reason for its actions." *Id.* at 1221 (citing *Burdine*, 450 U.S. at 253). If the employer articulates a legitimate, nondiscriminatory reason, the burden returns to the employee to prove that the employer's proffered reason is pretext for unlawful discrimination. *Crawford v. Carroll*, 529 F.3d 961, 976 (11th Cir. 2008).

The *McDonnell Douglas* framework, however, is not "the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). "A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents 'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional

discrimination by the decisionmaker.'" *Id.* (footnote omitted) (citation omitted).  A plaintiff may establish a "convincing mosaic" with "evidence that demonstrates, among other things, (1) 'suspicious timing, ambiguous statements . . . , and other bits and pieces from which an inference of discriminatory intent might be drawn,' (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019) (citations omitted) ("*Lewis II*").

Troy has moved for summary judgment on the Plaintiff's retaliation, race, and gender or sex discrimination claims.  In his response in opposition, Worthington argues that there are genuine disputes of material fact as to whether Troy discriminated against him because of his gender or sex, precluding summary judgment on that claim. Worthington also represents that he "does not contest Defendant's arguments relative to his race and retaliation claims." (Doc. 34 at 13).

The Court begins by addressing Worthington's claim of discrimination based on gender or sex.

### A. Discrimination Based on Gender or Sex

Worthington argues that he was discriminated against based on his sex or gender when he was terminated effective August 1, 2019.  He contends that he was treated less favorably than individuals outside his protected class, namely Beisel, Burkhardt, and Wheeler, who are female.  Worthington argues that his claim survives summary judgment

when analyzed under the traditional *McDonnell Douglas* framework, or alternatively that he can establish a "convincing mosaic" of circumstantial evidence.[1]

### 1. *McDonnell Douglas*

To establish a prima facie case of discrimination under the *McDonnell Douglas* framework, Worthington must show: (1) he belongs to a protected class, (2) he was subjected to an adverse employment action, (3) he was qualified to perform the job in question, and (4) his employer treated "similarly situated" employees outside his protected class more favorably. *Lewis I*, 918 F.3d at 1220–21.  It is undisputed that Worthington belongs to a protected class and that he was subjected to an adverse employment action. Additionally, for the purposes of summary judgment, Troy does not dispute that Worthington was qualified for his job.  Troy argues that Worthington nonetheless cannot establish a prima facie case of gender or sex discrimination because he cannot show that he was replaced by someone outside his protected class.  According to Troy, Worthington cannot make this showing because he was not replaced at all; rather, his position was eliminated as part of the Museum's "right-sizing" plan.  In his response in opposition,

---

[1] In his complaint, Worthington alleged a "mixed-motive" theory of discrimination. (Doc. 1 at 7–9).  When a plaintiff complains of sex discrimination, "[]he may rely on two legal theories to prove unlawful discrimination: (1) the "but-for" causation or "single-motive" theory; and (2) the "mixed-motive" theory." *Williams v. Housing Authority of Savannah, Inc*., 834 F. App'x 482, 487 (11th Cir. 2020) (quoting *Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016).

However, "[a] mixed-motive theory must be properly pleaded and argued at each stage of the litigation." *Billings v. Pettway*, 2021 WL 6050684, *18 (N.D. Ala. 2021).  In opposition to summary judgment, the Plaintiff makes no reference to a mixed motive theory of discrimination, and the Court is not required to analyze a theory not relied on in summary judgment.  *See Williams*, 834 F. App'x at 489; *Billings*, 2021 WL 6050684 at *18.  Thus, the Court concludes that the Plaintiff is not pursuing a mixed-motive theory of discrimination.

Worthington argues that he was treated less favorably than Beisel and Burkhardt, his female co-workers who were not terminated; and that he was treated less favorably than Wheeler, a female who Troy selected to fill the newly created Museum Guide/Office Assistant position.  Worthington argues in the alternative that that he *was* replaced by Wheeler, who is outside his protected class.  Thus, the Court discerns Worthington to be presenting two distinct claims of gender or sex discrimination: (1) Troy discriminated against him based on his gender or sex when it terminated him; and (2) Troy discriminated against him based on his gender or sex when it did not offer him the Museum Guide/Office Assistant position.  The Court will first address Worthington's argument regarding discriminatory termination and then will address his argument regarding discriminatory failure to hire.

### a. Termination

It is difficult to discern from Worthington's summary judgment filings his theory or theories of how he was treated less favorably than Beisel and Burkhardt.  In his Complaint, he alleges that Troy should have offered him Beisel's or Burkhardt's position instead of terminating him because he had more education and more relevant experience.  However, Worthington does not make this argument in his response in opposition to summary judgment.  Rather, he contends that he performed the same job duties as Beisel and Burkhardt and they all earned the same wages, making them similarly situated, but that Troy elected to terminate Worthington.  The Court construes Worthington's statements in his summary judgment response as an argument that Troy treated him differently based on

his gender or sex because Troy terminated him but did not terminate Beisel or Burkhardt. Because Worthington did not argue in his summary judgment response that Troy should have offered him Beisel's or Burkhardt's position, Worthington has abandoned this theory. *See Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.  Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." (citation omitted)).

The Court will assume without deciding that Worthington is similarly situated to Beisel and Burkhardt and, therefore, that Worthington has satisfied his *prima facie* case. Having assumed that Worthington satisfied his initial burden of demonstrating a *prima facie* case, the burden shifts back to Troy "to articulate a legitimate, nondiscriminatory reason for its actions." *Lewis I*, 918 F.3d at 1221 (citing *Burdine*, 450 U.S. at 253).  The burden at this stage is "exceedingly light." *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983).  It is merely a burden of production, not a burden of proof. *Id.*  Troy contends that it terminated Worthington for two reasons: (1) his duties were too similar to the Museum Director's, and (2) Troy could no longer financially support the position. These explanations satisfy Troy's burden.

Once the employer articulates legitimate, nondiscriminatory reasons for its decision, "the burden shifts back to the plaintiff to produce evidence that the employer's proffered reasons are a pretext for discrimination." *Alvarez*, 610 F.3d at 1264.  The plaintiff "cannot

succeed by simply quarreling with the wisdom of [the employer's] reason" and instead "must confront the employer's seemingly legitimate reason . . . 'head on and rebut it.'" *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1206 (11th Cir. 2013) (citations omitted). "The plaintiff can show pretext 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence,'" *Kragor v. Takeda Pharms. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012) (quoting *Burdine*, 450 U.S. at 256), such that a rational trier of fact could disbelieve the employer's proffered nondiscriminatory reason, *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147–48 (2000). To show pretext indirectly, the plaintiff "must demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" *Alvarez*, 610 F.3d at 1265 (citation omitted).

First, Worthington argues that Troy's explanation that it terminated him for financial reasons is pretextual because Troy's other actions are inconsistent with an entity facing budgetary concerns. In support, Worthington cites evidence that Troy created a new, paid position at the same time Troy eliminated his position, and that Burkhardt, his female co-worker who was earning the same wages as him, received a raise just before he was terminated. It is undisputed that Worthington was earning $14.80 per hour as Operations Manager; that a portion of the wages from the eliminated Operations Manager position were to be used to fund the new Museum Guide/Office Assistant Position, which

would be $10.00 per hour; and that the remaining savings were to be absorbed into Troy's budget.  Although Worthington presents evidence that Burkhardt received a raise, he proffers no evidence regarding the amount of the raise.  The amount of the raise—in particular, whether it equaled, exceeded, or was less than the remaining savings from eliminating his position—impacts whether the evidence is sufficient to create a genuine dispute of material fact as to whether Troy's explanation is unworthy of credence.  Without this or other relevant evidence identified by Worthington on this issue, the Court concludes that Worthington has failed to meet Troy's proffered explanation of budgetary concerns "head on and rebut it." *See Kidd*, 731 F.3d at 1206 (citation omitted).  Thus, on this record, Worthington has failed to demonstrate that a genuine dispute of material fact exists regarding whether Troy's explanation of budgetary concerns was merely a pretext for gender or sex discrimination.

Even if Worthington had demonstrated that Troy's explanation of budgetary concerns was pretextual, Worthington must rebut *each* of Troy's legitimate, nondiscriminatory reasons for terminating him. *See Crawford v. City of Fairburn*, 482 F.3d 1305, 1308 (11th Cir. 2007) ("If the employer proffers more than one legitimate, nondiscriminatory reason, the plaintiff must rebut each of the reasons to survive a motion for summary judgment.").  Regarding Troy's explanation that it terminated him because his job duties were too similar to the Director's, Worthington proffers no evidence or argument that this explanation is pretextual.  He does not, for example, proffer any evidence that his job duties were not similar to the Director's.  Thus, Worthington has

failed to rebut Troy's legitimate, nondiscriminatory explanation that it terminated him because his job duties were too similar to the Director's.

Worthington also suggests that he can show pretext because, according to him, Troy's reasons for terminating him have not been consistent. In support of this argument, Worthington points out that Bell's May 2019 memorandum mentioned that his duties were too similar to the Director's but did not mention financial concerns, and, conversely, that Troy's February 2020 EEOC Position Statement mentioned financial concerns but did not mention that his duties were too similar to the Director's. The Court is not persuaded that these two explanations are inherently inconsistent with one another. It is not implausible that an entity cannot financially support a position whose job duties are similar to those of another position. Nor is the Court persuaded that Troy's failure to articulate both reasons in the May 2019 memorandum and the February 2020 EEOC Position Statement would permit a reasonable jury to find the reasons unworthy of credence. Thus, on this record, Worthington has failed to demonstrate that there are inconsistencies in Troy's proffered legitimate reasons sufficient to allow a "reasonable factfinder to find them unworthy of credence." *See Alvarez*, 610 F.3d at 1265. Accordingly, Worthington has failed to show that Troy's reasons for terminating him were a pretext for gender or sex discrimination.

**b. Failure to Hire**

The Court next turns to Worthington's argument that he was discriminated against based on his sex or gender when Troy did not offer him the Museum Guide/Office Assistant position and instead selected Wheeler to fill the position. In a failure to hire case, the

14

plaintiff establishes a *prima facie* case by showing that: "(1) []he was a member of a protected class; (2) []he applied and was qualified for a position for which the employer was accepting applications; (3) despite h[is] qualifications, []he was not hired; and (4) the position remained open or was filled by another person outside of h[is] protected class." *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1273 (11th Cir. 2002) (per curiam).[2] Worthington admits that he was aware of the Museum Guide/Office Assistant position, but he proffers no evidence that he applied for the position.[3]  Thus, assuming without deciding that Worthington satisfies the remaining elements of the *prima facie* case, his failure to proffer evidence that he applied for the Museum Guide/Office Assistant position prevents him from establishing a *prima facie* case on his failure to hire claim.   To the extent Worthington argues that Troy discriminated against him because it did not offer him the position despite his failure to apply for it, the Court finds this argument unavailing.   On this record, Troy's not offering him the Museum Guide position on its own initiative does not permit a reasonable inference of intentional gender or sex discrimination.   Thus, Worthington has failed to establish a *prima facie* case with respect to his failure to hire claim.

---

[2] "The methods of presenting a prima facie case are flexible and depend on the particular situation." *Alvarez*, 610 F.3d at 1264; *see also Rioux v. City of Atlanta*, 520 F.3d 1269, 1275 (11th Cir. 2008) ("More than one formulation of the elements of a prima facie case exist."), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).

[3] Worthington testified in his deposition that he did not recall whether he applied.

### 2. Convincing Mosaic

Worthington argues in the alternative that, even if he cannot prevail under the *McDonnell Douglas* burden-shifting framework, his gender/sex discrimination claim nonetheless survives summary judgment because he has established a convincing mosaic of circumstantial evidence of intentional discrimination.  He contends that the following evidence demonstrates a convincing mosaic: (1) the timing between his termination, Burkhardt's raise, and Wheeler's hiring, which he asserts is "irreconcilable" with Troy's explanation that it terminated him because of financial difficulties; (2) Troy's explanation that his job duties were too similar to the Director's, which he asserts is inconsistent with Troy's decision to retain Beisel and Burkhardt and to hire Wheeler; and (3) Bell's disparaging statements about men and a log of past and present Troy employees, which Worthington says shows that Troy hired very few men during Bell's tenure as Museum Director.

The Court begins with Worthington's argument regarding the timing between his termination, Burkhardt's raise, and Wheeler's hiring.  For the reasons explained above in Part V.A.1.a, Worthington has failed to produce evidence sufficient to create a genuine dispute of material fact as to whether Troy's explanation of financial difficulties is pretextual.  And on this record, the timing would not otherwise permit a reasonable jury to draw an inference of discriminatory intent. *See Lewis II*, 934 F.3d at 1185.

Worthington also argues that Troy's explanation that his job duties were too similar to the Director's is inconsistent with Troy's decision to retain Beisel and Burkhardt and to

hire Wheeler.  Although Worthington does not explain how or why Troy's actions were inconsistent, the Court infers that it is because, according to Worthington, he also performed the same job duties as Beisel, Burkhardt, and Wheeler.  In addition to explaining that the Operations Manager's job duties were too similar to the Director's, Troy also explained that the Museum most needed more front-of-house and administrative support, not "management-level operations."  Thus, it appears to the Court that the duplication of job duties about which Troy was concerned was the duplication of management-level operations—duties which Troy determined were not a priority for the Museum at that time. Worthington's job duties undisputedly included management-level operations. Worthington identifies no evidence that Beisel, Burkhardt, or Wheeler's job duties included management-level operations.  Indeed, with respect to Beisel and Burkhardt, Worthington identifies no evidence regarding what their job duties were in general or, more specifically, which of their job duties Worthington also performed.[4]  On this record, Worthington has failed to demonstrate that the evidence is sufficient to allow a jury to infer intentional discrimination.

The Court now addresses Worthington's argument that Bell's discriminatory comments about men and Troy's hiring very few men during Bell's tenure as Museum

---

[4] In his response in opposition to summary judgment, Worthington asserts as an undisputed fact that he and Burkhardt shared particular job duties. (Doc. 34 at 2–3, para. 10).  In support of this fact, Worthington cites to paragraph 32 of his unsworn Complaint.  But in opposing a motion for summary judgment, the non-movant "must go beyond the pleadings and present competent *evidence*" to show that a genuine dispute of material fact exists. *See Davis v. Legal Servs. Ala., Inc.*, 19 F.4th 1261, 1265 (11th Cir. 2021) (per curiam) (emphasis added); *see also Hornsby-Culpepper*, 906 F.3d at 1311–12.  Here, Worthington fails to identify any *evidence* that he and Burkhardt shared job duties.  The allegation in Worthington's unsworn Complaint is insufficient.

Director help him establish a convincing mosaic of circumstantial evidence.  Worthington states in a declaration that Bell "routinely made discriminatory comments regarding men." (Doc. 33-2 at 1, para. 6).[5]   However, Worthington does not explain, or identify other evidence of, the context or content of Bell's allegedly discriminatory comments.  Thus, his allegation that Bell made "discriminatory" comments is conclusory, and "conclusory allegations without specific supporting facts have no probative value," *see Jefferson*, 891 F.3d at 924–25.  Thus, Worthington's statement about Bell's comments does not help him establish a convincing mosaic of circumstantial evidence.

In support of his argument that Troy hired very few men during Bell's tenure as Museum Director, Worthington directs the Court to an exhibit containing a list of all employees Troy hired from 1990 to 2021 for a variety of Departments, not just the Museum.  Worthington fails to identify the total number of Museum employees hired during Bell's tenure, the number of such employees who were male, or the number of such employees who were female, nor does he specify where in the list this information can be found.  Instead, it appears that Worthington expected the Court to perform this task for him.  Although the Court was not obligated to do so,[6] the Court has independently reviewed

---

[5]  Troy argues that the Court should strike this portion of Worthington's declaration because it is inadmissible hearsay.  Assuming without deciding that it is hearsay, the Court is not persuaded that the evidence could not be reduced to an admissible form at trial.  Alternatively, the Court declines to strike the evidence because the Court's consideration of the evidence does not change the Court's conclusion that Worthington cannot survive summary judgment on his sex discrimination claim.

[6]  At summary judgment, a party must support his assertions by "citing to *particular* parts of materials in the record." FED. R. CIV. P. 56(c) (emphasis added).  "Making district courts dig through volumes of documents . . . would shift the burden of sifting from [parties] to the courts.  With a typically heavy caseload and always limited resources, a district court cannot be expected to do a [party's] work for him." *Chavez v.*

the employee list and ascertained that, between 2009[7] and 2021,[8] the Museum hired 34 employees.  Of these 34 employees, 27 were female and 7 were male.  This evidence shows that Troy hired more females than males for positions at the Museum over a twelve-year period.  But Worthington points to no evidence as to how many individuals applied for a given position or the demographic makeup of those applicants.  For a given position Troy filled with a female applicant, it could be that there was only one applicant, or that only females applied, or that one female and ten males applied, or another scenario the Court has not listed.  The Court does not suggest that this additional data would be dispositive as to whether the Museum's hiring practices are evidence of intentional gender or sex discrimination.  But without any evidence shedding light on the context of the Museum's hires, the hiring data Worthington cites does not permit a reasonable inference of intentional gender or sex discrimination.

Finally, to the extent Worthington relies on Beisel's statement that Troy selected Wheeler over two more qualified males who applied for the Museum Guide/Office Assistant position,[9] the Court is not persuaded that this statement helps him.  Worthington

---

*Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (making this observation regarding a habeas petitioner's burden to establish a need for an evidentiary hearing).

[7] The earliest entry for the Museum that the Court could discern is from 2009.

[8] Although it is not clear from the record when Bell's tenure as Museum Director began, the Court will assume without deciding that Bell was Museum Director from 2009 to 2021.

[9] Troy argues that the Court should strike this portion of Worthington's declaration because it is inadmissible hearsay.  Assuming without deciding that it is hearsay, the Court is not persuaded that the evidence could not be reduced to an admissible form at trial.  Alternatively, the Court declines to strike the evidence because the Court's consideration of the evidence does not change the Court's conclusion that Worthington cannot survive summary judgment on his sex discrimination claim.

identifies no evidence regarding the respective qualifications of Wheeler and the two purportedly more qualified males.  Thus, Worthington's proffered evidence is nothing more than Beisel's opinion that the two male applicants were more qualified than Wheeler, which is insufficient to permit an inference of discriminatory intent. *Cf. Anderson v. Triad Int'l Maint. Corp.*, 2012 WL 2044968, at *11 (M.D. Fla. June 6, 2012) (concluding that employee's opinion that he was the better candidate for a position was "not enough to demonstrate pretext").[10]  On this record, the Court declines to second-guess Troy's business judgment that Wheeler was the appropriate choice for the Museum Guide position. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc) (citation omitted) (explaining that courts do not second-guess an employer's business judgment).  Therefore, on this record, Worthington has failed to establish a convincing mosaic of evidence of intentional gender or sex discrimination.

### B. Worthington's Remaining Claims

Troy also moved for summary judgment on Worthington's race discrimination and retaliation claims.[11]  Worthington represents that he "does not contest Defendant's arguments relative to his race and retaliation claims." (Doc. 34 at 13).  Worthington does

---

[10] While the Court recognizes that *Anderson* is nonbinding, the Court finds its analysis persuasive.

[11] Worthington brings race discrimination and retaliation claims under Title VII and § 1981.  In his Complaint, Worthington bases his § 1981 discrimination and retaliation claims upon the same facts as his Title VII race discrimination and retaliation claims. The legal elements required to establish a retaliation claim under § 1981 and Title VII are the same. *See Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008).  Similarly, the elements of a § 1981 race discrimination are "the same as a Title VII disparate treatment claim in the employment context." *Jenkins v. Nell*, 26 F.4th 1243, 1249 (11th Cir. 2022). Therefore, in this case, Worthington's § 1981 claims "rise and fall" with his Title VII claims. *See Flowers v. Troup Cnty. Sch. Dist.*, 803 F.2d 1237, 1335 n.7 (11th Cir. 2015).

not otherwise respond to the substance of Troy's arguments regarding his race or retaliation claims, nor does he argue that there is any genuine dispute of material fact precluding summary judgment on his race or retaliation claims.   Thus, the Court concludes that Worthington has abandoned his race and retaliation claims. *See Resol. Tr. Corp.*, 43 F.3d at 599 ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.").   Accordingly, summary judgment is due to be granted on those claims.

## VI.  CONCLUSION

For the reasons stated, it is

ORDERED as follows:

1.      The Defendant's motion for summary judgment (doc. 30) is GRANTED.

2.      The motion to strike (doc. 35) is DENIED as moot.[12]

3.      This case is DISMISSED with prejudice.

A separate Final Judgment will enter.

Done this the 31st day of August, 2022.

                        /s/ Emily C. Marks
                 EMILY C. MARKS
                 CHIEF UNITED STATES DISTRICT JUDGE

---

[12] Troy moved to strike portions of Worthington's declaration on multiple grounds.  Because the Court's consideration of the declaration does not change the Court's conclusion that Worthington cannot survive summary judgment, the motion to strike is due to be denied as moot.